UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
DAVID MOORE,

                Plaintiff,

      -against-

MARC BRADT,

                Respondent.
------------------------------------------------------------x

**MEMORANDUM & ORDER**

09-CV-2167 (ENV)

VITALIANO, D.J.,

    Petitioner David Moore, appearing *pro se*, brings this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, against respondent Marc Bradt, then-Superintendent of the Clinton Correctional Facility. Moore contends that his right to a fair trial was violated by the admission of evidence of a prior criminal act and the prosecutor's comments on the prior bad act at trial. Respondent argues that Moore's claims are procedurally barred and are, in any case, without merit. For the reasons set forth below, the writ is denied and Moore's petition is dismissed.

## Background

    On July 9, 2004, at around 8:00 p.m., David Moore rang the doorbell of Mary Laskowski's home at 94-21 80th Street, Queens, New York.[1] (Transcript of Conditional Examination of Mary Laskowski, December 3, 2004, ("Dec. 3, 2004 Hearing") at 6-7.) Laskowski was 83 years old at the time. (*Id.* at 4). Although she

---

[1] Because Moore was convicted, the Court recites the following facts in the light most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

1

testified that her eyesight was too poor to identify the defendant from the stand, Laskoswki was able to describe the man who came to her door as a black male, between 30 and 35 years old, with braided hair and freckles, wearing a black suit jacket, and carrying a beige portfolio or folder. (*Id.* at 8-10). Moore asked Laskowski if he could come inside to talk to her about Social Security, and she refused him. (*Id.* at 10). Instead, Laskowski asked Moore to show her the paperwork he was holding in the portfolio through her storm door window. Moore declined and left the premises. (*Id.* at 11). A neighbor living across the street, Joseph Scala, watched this entire interaction. Scala then saw Moore walk back towards the Laskowski household moments later, without the envelope, walk into the backyard, go around the house, and then proceed to crawl on his hands and knees between the backyard and the front of the house. (Tr. at 274-76.) As he watched, Scala called his sister, who lived next door, and instructed her to call the police. (Tr. at 275.)

Officers Kelly Tafe and Eric Hores arrived at the scene a few minutes later. (Tr. at 326-27.) Officers Tafe and Hores entered Laskowski's backyard and observed Moore crouched in some bushes. (Tr. at 329.) The officers ordered Moore to stop and show his hands; he did not comply and fled. (Tr. at 329.) After a chase, Moore was apprehended by Officer Hores in another backyard several lots down from Laskowski's. (Tr. at 333.) During the chase, Officer Tafe observed Moore discard his suit jacket; she subsequently recovered it, and discovered inside a pair of leather gloves, a pair of latex gloves, a school identification card, and a piece of wire with metal bars attached to each end, which both officers recognized as a

strangulation device.[2] (Tr. at 334-35.) After Moore was apprehended, Scala observed him in police custody and identified him as the person he saw crawling around Laskowski's backyard. (Tr. at 17, 278.)

The next day, Officers Tafe and Hores returned to the scene with another officer to search for evidence. (Tr. at 20.) They discovered a Ford Taurus parked on Laskowski's street, the key for which had been recovered at the scene the previous day, following Moore's apprehension. (Tr. at 20-21). A subsequent search of the vehicle yielded a black bag with a chef's knife, pliers, rope, latex gloves, and a folder containing a magazine entitled *50-Plus Senior*. (Tr. at 22-23).[3]

Moore was charged with two counts of attempted burglary in the second degree (New York Penal Law §§ 110/140.25 [2]), criminal possession of a weapon in the fourth degree (New York Penal Law § 265.01 [2]), resisting arrest (New York Penal Law § 205.30), and possession of burglar's tools (New York Penal Law § 140.35) (Queens County Indictment Number 2376/2004). He proceeded to a jury trial before Judge Michael B. Aloise.

Prior to trial, the prosecution sought leave to present evidence in its case-in-chief of a prior crime, pursuant to the legendary *People v. Molineux*, 168 N.Y. 264 (1901).[4] The court held a pre-trial hearing on January 5, 2005, at which the

---

[2] Officer Hores testified that he actually recovered these items from Moore's pants pockets.

[3] The admissibility of the evidence recovered during the search of the car was contested but permitted by the trial court, which held that Moore failed to establish a legitimate expectation of privacy or possessory interest in the vehicle or the key. (Tr. at 63-64).

[4] *People v. Molineux*, 168 N.Y. 264 (1901) sets forth the rule that evidence of prior crimes or

prosecutor argued that evidence of a 1988 burglary, to which Moore pleaded guilty ("the 1988 burglary"), should be admitted as evidence of petitioner's intent, as well as evidence identifying him as the perpetrator in the instant case.[5] The prosecutor sought to establish that, in 1988, Moore, posing as a United Parcel Service employee, in a brown uniform and holding a package, rang the doorbell of an elderly couple, forced his way into their home at gunpoint, beat them, bound them with tape, and robbed them. (*Molineaux* hearing at 8-11).

The People argued that the 1988 burglary was highly probative of Moore's intent when he sought entry to Laskowski's home. The evidence was needed, the prosecutor argued, because Moore's intent was otherwise ambiguous based on the facts, and Moore had placed his intent at issue by eliciting testimony from Laskowski that he had never attempted to force his way into her home when he initially came to the door. (*Id.* at 15-16.) The prosecutor further argued that evidence of the 1988 burglary was admissible to prove Moore's identity as the perpetrator, which Moore had also placed at issue. Because the facts of the two cases established a unique *modus operandi*, the People contended, evidence of the prior crime was probative of identity too. In particular, the prosecution pointed out that in both the 1988 burglary and the instant burglary, Moore chose elderly victims,

---

bad acts is admissible to prove a specific crime if it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan between the commission of two or more crimes, or the identity of the person charged with the commission of the crime.

[5] Apparently Moore had been arrested for a series of similar burglaries of elderly people, but the prosecution sought to introduce evidence of only the most recent and relevant one. (*See* Transcript of January 5, 2005 proceedings ("*Molineaux* hearing") at 9.)

used ruses to attempt to gain entry into the victims' residences, used props to facilitate those ruses, and, in both instances, was armed with a weapon. (*Id.* at 19-20). Then, given that Moore was incarcerated between 1988 and 2000, the prosecution further argued that the prior burglary was not too temporally remote to be probative, as Moore had no opportunity to commit "such similar crimes" while incarcerated. (*Id.* at 22-23.) Petitioner argued in opposition that the evidence of the 1988 burglary was impermissibly prejudicial. He also argued that the 1988 burglary was too remote in time to be probative of intent, and too dissimilar to the instant crime to establish a unique *modus operandi*, and would actually be used to establish Moore's propensity to commit a certain type of crime. In an oral decision delivered immediately prior to the commencement of petitioner's trial, on January 10, 2005, the trial court granted the *Molineux* application. (Tr. at 2-4.)

The People put the 1988 burglary to work right from the start. In her opening statement to the jury, the prosecutor described the 1988 burglary in detail. Defense counsel objected, and the trial court reminded the jury that opening statements are not evidence, and that the court would instruct the jury as to the purposes for which it could consider any evidence of a past crime. (Tr. at 262.) During the trial, retired Detective Edward Simonetti, the officer who responded to the 1988 burglary, testified as to what he observed when he arrived at that crime scene. Retired Detective Robert Bolson, who apprehended Moore in connection with the 1988 burglary a week later, testified that he initially stopped Moore because he fit the description of the perpetrator of that crime. (Tr. 398.) At the time of arrest, Detective Bolson testified, Moore was dressed in a brown uniform,

5

carrying an empty, unmarked box wrapped in brown paper, and a blank legal pad. A search revealed that Moore was carrying a starter's pistol that appeared to be a real gun, a pair of handcuffs and handcuff keys, and a roll of brown cellophane tape of the same type that had been used to bind the victims, and that Moore was wearing a wig.[6] (Tr. 399-403.) During summation, the prosecutor walked the jury through the similarities between the two burglaries, including the elderly victims and the use of a disguise. (Tr. 490-91.) She argued that the jury could use those similarities to infer what Moore intended to do had he been granted entry into Laskowski's home. (Tr. 492.) Interwoven in the theme was the prosecutor's response to defense counsel's challenge, on summation, to identity and intent, arguing that Moore had been in Laskowski's yard for an innocent purpose, and was not the same man that had rung her doorbell moments earlier. (Tr. 477.) As part of his charge to the jury, the trial judge instructed that evidence of the 1988 burglary was permitted solely for the purpose of proving the defendant's intent, and could not be considered as proof of propensity or disposition to commit any crime. (Tr. at 513.)

---

[6] During trial, it became clear that the prosecution would only be able to establish that Moore had disguised himself as a UPS worker to gain entry to the victim's home in the 1988 burglary by relying on hearsay or circumstantial evidence—the victims were deceased, there were no witnesses, and those details had not been part of Moore's plea allocution. (Tr. 374-76.) Defense counsel moved for a mistrial, arguing that he and the court had been misled into believing there was admissible evidence of this fact. The prosecutor argued that she would prove the UPS ruse through circumstantial evidence. The trial court adhered to its original decision, emphasizing that the jury could use the evidence of the 1988 burglary to infer Moore's intent in the current case; the court was silent as to whether it the testimony would still be considered proper evidence of Moore's identity. (Tr. at 377.) As a practical matter, the two are inseparable. Given Scala's testimony that Moore was the man who rang the doorbell, any *modus operandi* evidence going to his intent when he rang the bell would also necessarily bear on his identity as the perpetrator.

The jury convicted Moore of attempted burglary in the second degree, criminal possession of a weapon in the fourth degree, resisting arrest, and possession of burglar's tools. On September 29, 2005, Moore was sentenced to concurrent terms of 21 years to life on the attempted burglary conviction and one year on each other count of conviction.

Moore appealed his conviction to the Appellate Division, Second Department, on the ground that the trial court erred in admitting evidence of the 1988 burglary, or, alternatively, at least "in permitting the prosecutor to conduct a virtual mini-trial on the 1988 burglary," including "inflammatory comparisons on opening and closing between the disturbing facts of the prior incident and the actual charges at trial and repeated reference to facts the prosecutor could not prove with direct, non-hearsay evidence." (Br. for Defendant-Appellant at 3.) The Appellate Division affirmed the conviction. *People v. Moore*, 50 A.D.3d 926, 927, 854 N.Y.S.2d 782 (2008). Specifically, the court held that the evidence was properly admitted by the trial court to show that Moore employed a similar *modus operandi* in both crimes, as well as to prove intent, particularly in light of "the defendant's contention, raised in defense counsel's opening statement and through defense counsel's cross-examination of the People's witnesses, that his presence at the scene of the alleged attempted burglary was entirely innocent." *Id.* The Second Department went on to hold that Moore failed to preserve for appellate review his claim that the *quantity* of the *Molineux* evidence presented to the jury was unduly prejudicial, as well as his challenges to comments the prosecutor made in her opening and closing statements regarding the 1988 burglary, and that, in any event, any error was harmless. *Id.*

Moore sought leave to appeal to the New York Court of Appeals, which was denied on June 19, 2008. *People v. Moore*, 10 NY.3d 937 (2008). Moore filed his petition for federal habeas corpus on May 13, 2009.

## Standard of Review

Under the Antiterroism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a writ of habeas corpus shall not issue with respect to any claim that was adjudicated on the merits in state court unless the state court's decision: (1) "was contrary to," or involved an unreasonable application of, "clearly established federal law" as determined by the United States Supreme Court, or, (2) "was based on an unreasonable determination of the facts" in light of the evidence presented. 28 U.S.C. § 2254(d); *see also Gutierrez v. McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). AEDPA's deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011); *see also Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). Where AEDPA deference applies, "a state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (*quoting* 28 U.S.C. § 2254(e)(1)).

Furthermore, federal habeas review is not available where a claim has already been decided by a state court, and the state court's decision "'rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.'" *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011), *cert.*

*denied*, 132 S. Ct. 2439 (2012) (*quoting Cone v. Bell*, 556 U.S. 449, 465 (2009)). This includes situations in which the state court "declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Federal courts may not review such a procedurally defaulted claim unless the petitioner can show both "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," i.e., that the petitioner is actually innocent. *Id.* at 724; *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001).

Finally, because Moore is proceeding *pro se*, "his petition will be construed liberally and interpreted to raise the strongest arguments it suggests." *Paez v. U.S.*, Nos. 11-cv-2688, 08-cr-0823–03, 2012 WL 1574826, at *1 (S.D.N.Y. May 3, 2012) (citing *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

## Discussion

Moore seeks collateral relief on the same two grounds raised in his direct appeal: first, that the state court erred in permitting the prosecution to present evidence of the 1988 burglary; and second, that the court erred in permitting the prosecution to conduct "a virtual mini-trial" on the 1988 burglary, by making inflammatory comparisons between the two crimes during opening and closing, and repeatedly referring to facts that the prosecution could not prove with direct, non-hearsay evidence. (Pet'n at 3.) Moore asserts that these errors violated his Fourteenth Amendment due process rights, and his Sixth Amendment right to a fair

trial.

Moore's first claim—that it was error to admit evidence of the 1988 burglary—was decided on the merits by Queens Supreme Court and affirmed by the Appellate Division. *See Moore*, 50 A.D.3d at 927. Accordingly, this Court's inquiry is limited to whether the state court's decision was contrary to, or involved an unreasonable application of, "clearly established federal law," or, "was based on an unreasonable determination of the facts" in light of the evidence presented. 28 U.S.C. § 2254(d).

"A decision to admit evidence of a criminal defendant's uncharged crimes or bad acts under *Molineux* constitutes an evidentiary ruling based on state law." *Sierra v. Burge*, No. 06-cv-14432, 2007 WL 4218926, *5 (S.D.N.Y. Nov. 30, 2007). It is well-settled that a petitioner seeking federal habeas relief based on a state court evidentiary ruling must demonstrate that the alleged error violated a constitutional right, and "was so extremely unfair that its admission violates fundamental conceptions of justice." *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (*abrogated on other grounds*) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). A petitioner bringing such a claim "bears a heavy burden because evidentiary errors generally do not rise to constitutional magnitude." *Sierra*, 2007 WL 4218926, at *5 (quoting *Copes v. Shriver*, No. 97-2284, 1997 WL 659096, at *3 (S.D.N.Y. Oct. 22, 1997)). "For an 'erroneous admission of . . . unfairly prejudicial evidence to amount to a denial of due process, the item must have been sufficiently material to provide the basis for conviction or to remove a reasonable doubt that

would have existed on the record without it.'" *Id.* (quoting *Dunnigan*, 137 F.3d at 125).

Moore does not, and cannot, make any such showing. In fact, the trial court's *Molineaux* ruling was not erroneous. Under New York law, evidence of a prior bad act is admissible to "prove the specific crime charged" when it tends to establish, among other things, intent or identity. *See Molineux*, 168 N.Y. at 293. As the Second Department determined, evidence of the 1988 burglary was relevant to Moore's intent, which Moore placed squarely at issue in his opening statement and cross-examination of the People's witnesses, by contending that his presence at the scene of the alleged attempted burglary was innocent. *Moore*, 50 A.D.3d 926, 927. The trial court also correctly ruled that the two crimes possessed sufficiently unique characteristics in common that evidence of the 1988 burglary was probative as to Moore's identity. The trial court appropriately exercised its discretion in determining that the probative value of this evidence outweighed its prejudicial potential. *See People v. Alvino*, 71 N.Y.2d 233, 242, 519 N.E.2d 808, 813 (1987). Nor did the fact that the prior burglary occurred in 1988 render the prior crime excessively remote, given that Moore had spent 12 of the intervening 16 years in prison. *See People v. Wilson*, 278 A.D.2d 65, 717 N.Y.S.2d 178 (1st Dep't 2000). Given this Court's conclusion that the trial court did not err in admitting the evidence in question, the decision certainly was not an "unreasonable application of clearly established federal law." 28 U.S.C. § 2254(d).

Moreover, even if it the trial court did err in admitting the evidence, the error

did not escalate to the level of constitutional violation, nor did it render Moore's trial fundamentally unfair. Any error was clearly harmless because there was other, extensive evidence of Moore's guilt. The consistent testimony of Laskowski, Scala, and the arresting officers regarding Moore's refused entry to a stranger's home and the description of him soon after crouching covertly in the stranger's backyard, along with the possessions recovered from Moore at the scene, presented more than sufficient proof of Moore's guilt of the offenses of conviction, even without evidence of the 1988 burglary. Given the abundance of inculpatory evidence presented, any potential harm caused by the introduction of the 1988 burglary was not "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *See Dunnigan*, 137 F.3d at 125 (denying habeas relief as evidentiary errors did not render the trial fundamentally unfair).

Additionally, any prejudice to Moore from the admission of the evidence was further mitigated by the trial court's limiting instruction to the jury, that the evidence of the prior crime was only to be considered for the purpose of demonstrating Moore's intent, and not as evidence of his propensity to commit the instant burglary. (Tr. at 513.) *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("juries are presumed to follow their instructions.")

Moore's second claim—that the prosecutor in his case made excessive references to the 1988 burglary in her opening and summation, and presented excessive evidence of the 1988 burglary at trial—was rejected by the Second

12

Department as unpreserved for appellate review. This decision rests on an independent and adequate state procedural ground. *See* N.Y. C.P.L.R. ("CPLR") § 470.05 (An issue of law is preserved for appellate review only if the defendant objected to or otherwise protested the alleged error at trial); *Downs*, 657 F.3d at 104 ("... we have held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule."). As such, this Court is barred from reviewing this claim, unless Moore can establish both cause for the default and prejudice.[7]

Moore does not allege any cause for his failure to raise this claim before the trial court, and none is apparent from the record. Nor does Moore assert at any point in his petition that his counsel was ineffective. Moreover, Moore fails to demonstrate that prejudice would arise from failure to review the defaulted claim; in other words, that but for the alleged error—that is, the way the prosecutor proved the prior bad act, as opposed to the fact that proof of the bad act was admitted at all—there is a reasonable probability that the outcome of the trial would have been different. *See Strickler v. Greene*, 527 U.S. 263, 289 (1999). Indeed, given the buttressed strength of the People's case against Moore for the 2004 burglary, as discussed above, there is ample basis on which to conclude that had less evidence of the 1988 burglary, or fewer details of that crime, been

---

[7] Moore does not assert that he is actually innocent, nor does he suggest anything else that would demonstrate that a "fundamental miscarriage of justice" arises from failure to address this claim. *Murray*, 477 U.S. at 496.

13

presented, the outcome of Moore's trial would have been the same.

That is why, even if this claim had not been defaulted, it would be meritless. Plus, a prosecutor's comments at trial do not rise to the level of a constitutional violation unless they have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Id.* (quotation marks omitted). Here, Moore points to no particular pieces of testimony or comments by the prosecution that exceeded the probative value of the evidence, and, indeed, the record indicates that the evidence presented as to the 1988 burglary did not exceed that which was probative of Moore's intent and/or identity as the offender, and that the prosecutor's comments were appropriately tailored to that end. The prosecutor pointed out the factual commonalities between the 1988 burglary and the instant crime, telling the jury that it could use these facts to assist in deducing Moore's intent when he asked to enter Laskowski's home. The prosecutor expressly told the jury that evidence of the 1988 burglary was not to be used to convict Moore merely because he was a bad person or had committed a crime in the past. (Tr. 492.)

## Conclusion

For the foregoing reasons, the petition for habeas corpus filed by David Moore is dismissed and the writ is denied. Additionally, as Moore makes no substantial showing of a denial of a constitutional right, a certificate of appealability

will not issue. 28 U.S.C. § 2253. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-5 (1962).

The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
April 4, 2014

s/Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge